Okay. Is this for the extension of time? Is this a reconsideration for a default judgment? Right. I have two, two issues. So shall we start with the default judgment? Okay. You start however you want to start. Okay. So basically this comes down to a denial of discharge in a bankruptcy case. The trustee filed a motion for extension of time to allow more time to request a denial of discharge. And then there was a motion for default judgment and that default judgment was ultimately granted. And the core of the issue is whether or not the trustees filing of asking for the extension of time and subsequent default judgment had a basis. And if you look at the seven issues that the trustee raised as the basis for a denial of discharge, each one of them were on the record as having a date that it was a known issue. And according to rule 4004,  that could lead to a denial of discharge, the party has to file promptly according to 4004 B2. And in this particular case, the trustee didn't file any requests for extension of time or default judgment until six years after the court stated what the deadline was, which was November, 2013. Well, let me stop you there because I agree with you in part and I disagree with you in part. There were a lot of reasons and some of them were way in the rear view mirror. You're absolutely right. But the fact that you hadn't produced certain documents and the conclusion that you had not told the truth during trial and the determination that you sold stock you shouldn't have sold, those were all made very shortly before. I mean, within 60 days of the request for extension of time. Is that not correct? That is correct. So I will say if you isolate all the issues and we look at the no juice issue in particular, which was the sale of stock, I feel that that could be fair because out of all those issues, there's only one pending item that may have been used as a basis. And if you look at the judge's orders, it's very unfair the way it was written because in the original request to go after the no juice money, the trustee was alleging that I had sold multiple stocks, 15 or 16 checks totaling 165 grand or something like that. The court looked through all of the checks and what I provided to the court was actually the loan documents and the warrants from my securities attorney who's a well-known attorney in here in Hawaii. Mr. Painter knew who I use for those security and loan documents. And the documents that I provided actually substantiated that it was a loan and not a sale of stock. So these were- But that issue isn't in front of us. I mean, that issue was decided. The only issue in front of us is the, as you say, the timing of the request for non-dischargeability and the non-dischargeability, the actual conclusion that you sold shares inappropriately isn't in front of us. We're, for purposes of this, don't we have to just assume that, yeah, there were $25,000, right? That's correct. So the court ultimately ruled that one check was a sale of stock. But if you look at that one check, it was made out to me, there was no memo of sale of stock. And it was, I don't agree, it was not a sale of stock. Well, but this isn't the point. I mean, yeah, I'm trying to get you to focus on, we come into an appeal with certain constraints. And one of our constraints here today is we are going to assume, because we have to, that you sold stock you shouldn't have sold, that it was $25,000 was involved, which is not nothing. And that was determined very shortly before he granted an extension of time to allow the trustee to seek to revoke your discharge and that that sale was one of the factors that was a potential basis for non-dischargeability. So to sort of cycle back, if that's all we have, if all we have here is that determination and that timing, shouldn't we affirm? I don't believe so. What I think is, I agree that that one issue of nojuice.com could be timely. That one check. Because that was the only one in 2020 that was timely. You know, he filed the request within the 4003B. So what I would like is for the court to consider my discharge using what is timely. And to me, there was one issue that was timely, which was possibly the nojuice $25,000 check. And I'd be happy to detail within a hearing with that judge how that one check could not be a basis for discharge. And the problem I have with it is in the judge's order, he writes all these reasons that were untimely plus the nojuice. If his order was specifically only about the nojuice, he was able to dive in it. And he was specific and said, there was one check out of 14 that I ruled to be a stock. It didn't even say stock sale on it. You know, if he was more specific about the type of documents I produced, which actually eliminated the trustees other 14 checks that he thought. So I showed these loan documents that showed it was a loan, not a stock sale. And that was the documents I produced. The court ultimately said, okay, yeah, these are valid. It's not a stock sale, but this one check, I'm ruling that it's a stock sale. And I feel like if our hearing on the denial of discharge was specific to that one check, that's a fair shake. Because I don't think that's a strong enough basis for denial of discharge. But to try and add up all these other things where he was six, seven years late, I feel like it convolutes the order because you're adding 99% of things that don't matter that are untimely. And you're adding it to one check that's a question. Okay, but didn't you have an opportunity to argue that which you gave up by not responding and appearing in the proceeding for revocation of discharge? You could have argued that. Absolutely. And you didn't. Yes, you're absolutely correct. And I missed that because I had no idea that that was going on. This case has been going on for seven years. I've had hundreds of dockets, you know, maybe 800 dockets, 60, 70 motions and appearances. I haven't missed any of them. The only one I missed was after the pandemic started, I was in complete lockdown. I was in the front lines doing all the PPE. And there's no way that I would voluntarily miss this, you know, the hearing or the motion. I just completely missed it. And that's not like a great excuse, but this world just got shut down. And I was under the impression that all courts and everything was shut down. So Judge Ferris, well, I agree that the claim of defalcation is, as I said, some of it's pretty stale. He said that the determination, in addition to the stock sale, that the determination at trial, you produce some additional documents right before trial that should have been produced earlier. And he found at trial that you didn't tell the truth. He said, those two things in and of themselves, which are new, would have supported non-dischargeability. Did he not? Doesn't that sort of take away your argument that he relied on all this stuff? Well, you know, I completely disagree with his ruling on the $25,000 check. You know, there was no memo that said stock sale. Right. He found that- But did you appeal from that? No, I didn't appeal. So it's, you know, so unfortunately there's consequences for action and inaction, and the consequences of inaction in that regard are, that's an established fact in this case, for him and for us. I could understand that. And I think that the fair thing for him to do would be to take all the stale stuff out and to elaborate in a hearing about this one check and about how, he's saying that I lied about the stock sale. We completely disagree about it. There was no stock sale. He came to the conclusion that this one check was a stock sale, even though the memo doesn't say that. And that's completely unfair, you know, for him to jump to this check doesn't have a memo and Adam saying it wasn't a stock sale, but I think it is. It's not enough to call me a liar. But again, you're arguing, that argument's not gonna be helpful to you here or to us in deciding this case because you didn't appeal from that. So that is law of the case. That is a determined fact in your case that you can talk about it here, but you're wasting your time. We have to assume that it was correct. That's why what I'm asking the court to do is throw out all the stale stuff. Don't allow an order to have 99% stale stuff and one little paragraph about one check. You know, the judge should have a hearing and a motion specifically about this one check and not convoluted with 99 other things that were obviously untimely is my opinion. I wanna make sure I understand the record here. You never got a discharge, right? Correct. And that's because apparently you did not ever get the financial management education. I got the financial management education finished. The trustee saw that I got it done and then they filed for an extension of time. But I thought that by, because I got a notice from court saying, finish your debtor certification. I did it, but I didn't know I had to do anything else. There was no like, oh, do this or do that. Then Mr. Painter saw it and right after I filed my debtor certification, he filed for this extension of time. And what I- So it's not a revocation of discharge. It's just a denial of discharge. Yes. And so for me, I have no problem with diving into the no juice issue about the one stock sale. I have no problem with defending myself that I did not lie. This is the judge saying that he thinks I sold and I'm saying I did not. To this day, you look at the check, he has to look, have another hearing, reconsider the discharge and throw out all the stale stuff. He shouldn't be allowed to- He doesn't. Well, again, you're into your five minutes. Do you want to reserve now or continue arguing? I'll reserve. Okay, thank you. All right, Mr. Painter. Yes. Um, I think that the debtor fails to appreciate the difference between the grounds that would support a revocation of discharge and the grounds that would support the denial of a discharge. We moved to extend the time to object to the debtor's discharge during the gap period. After the original time to object had lapsed, but before a discharge had been entered. All right. I mean, to be kind of blunt about it, the bigger issues with him, I mean, he's quibbling about the 25,000, quibble not being perhaps the correct, he's arguing that the $25,000 stock sale wasn't right. He didn't appeal from that. So we're going to assume that. Why didn't you move for an extension when you, you know, way back in the day when you knew he'd, he's not even arguing he didn't do things improperly with some of the state assets? Well, because the grounds for revocation and in order to get an extension of time during the gap period, you have to have grounds to revoke a discharge. That's what 404B2 states. All right. That is much narrower than the grounds for denial of a discharge. Under 404B, the grounds for revocation are only those stated in section D, 727D and 727A6. Okay. But didn't you determine fairly early in the case that he had misused the state assets and wouldn't that be one of those grounds? No, that was not one of the grounds. And what we had determined, there was two turnover motions. The first- That's what I'm referring to, yeah. Yeah. The first motion required the debtor to turn over specific assets and possession of real property. The debtor appeal. That appeal was not decided until 2018. Regarding the turnover of things like firearms, $2,400 from a Roth IRA account, and rental proceeds, the debtor claimed that he couldn't turn those over because he didn't have the money. So not having money to turn over things would not, in order for a discharge to be denied or failure to turn over, it has to be knowing and it has to be willful. Inability would not sustain an objection to discharge. Okay? So, and this trustee, as all trustees and bankruptcy courts, the main purpose of a debtor for filing bankruptcy is to end a discharge. And the trustee should not be prematurely pulling the trigger on 727 complaints unless he has very solid grounds. In this particular case, the grounds continued to kind of accumulate over a period of time. The longer the case went on, the more the debtor's conduct suggested that a denial of discharge would be warranted. And then when the Snowjuice issue came up in 2019, that was really the straw that broke the camel's back and gave the trustee reasons to revoke a discharge had it been entered,  And that's what happened. Your point is the business decision to seek to deny slash if he'd done what he needed to do, it would have been to revoke, wasn't made until the Nojuice issue came up. But prior to that, there was some level of concern, but the straw was Nojuice. Well, there was a second turnover. The first turnover order was resolved in 2018. A second on appeal by the deny circuit, I'm sorry. There's the second turnover order. That wasn't resolved until 2019. So it was a combination of the, and what happened there is when the debtor didn't turn over assets as required, a monetary judgment for the value of those assets was entered against the debtor. There was still a deficiency. We were able to collect a portion of that through a set off, but there was still a deficiency. All right, and so that wasn't until late in the game, that failure to turn over. And by that time, we no longer believed the debtor regarding his inability to repay the trustee. There was evidence that the debtors had more than the ability to pay the monies that he had owed. He had told his CPA that he made two point something million dollars in, I think it was 2016 or 2017. We found out that he was living in the house up in the amount of place that was a $2 million residence. So by 2019, we didn't believe the debtor had an inability to pay or turn over what the court had ordered him to do. And we also had discovered evidence that he had, in fact, after the petition date, sold these no juice stock. We had requested documents. He didn't produce the documents relevant to that for over two years. On the eve of the evidentiary hearing, he produced a bunch of promissory notes, which caused me to tell the court, if these notes are accurate, then our claim is reduced from the $160,000 that I originally thought it was to $25,000. And that $25,000 was clearly a sale of stock to his father, as his father had testified. During the hearing, the debtor even went so far as to tell the court that he couldn't have sold stock because he never owned any no juice stock, even though his ownership of that stock had been listed in his schedules. So the debtor just lied to the court about every which way he could. Now, Judge Ferris, who I've appeared before on numerous times, in my opinion, is a very tempered, even-handed judge. He doesn't go, he's very kind to parties that appear before him. He doesn't go out of his way to disparage parties. But in this particular case, he pointed out that Mr. Lee lied to the court, that he had been knowingly making these falsehoods, and that Mr. Lee was, I think, in Judge Ferris' opinion, the second worst debtor he'd ever run across. And that this case applied for denial of discharge. So I believe- And in denial of discharge, the judge did focus, you listed everything, some of which was, again, you knew about a very long time ago. You may have made some value judgments about it in the interim, but were things that the trustee was aware about for years. But Judge Ferris specifically noted the failure to produce the documents until the eve of trial, and the conduct during the trial, and I would add the conclusion of the trial, as three factors that justified a denial of discharge. Is that enough? If we ignore all the other stuff you had in there. Oh, well, I don't think we needed all the other stuff. But of course, I included it. But yes, of course, if the court finds that the debtor has lied to the court, that the debtor has failed to provide documents as required, and that the debtor has taken assets and refused to turn them over, then that certainly denies a discharge. So the 25,000 is significantly substantial that it would qualify? Yes, yes. I don't think there's any limit on it. I've reviewed cases where failure to turn over assets worth less than $1,000 grounds for denial of discharge. Depends on the circumstances of the case. And in this particular case, obviously we believed that the proceeds that he had received from the sale of stock was in about $160,000 amount. And it was only because he produced these notes two days before the evidentiary hearing, despite having promised to provide them for a substantial period of time, that I advised the judge that if I accepted these notes, our claims would be limited. And these notes were notes payable by him or notes receivable by him, from him, to him? These were notes where people had loaned money to note use. Okay. My recollection is, and he keeps saying that the one check that was made was not made to note use, it was made to him. Well, that was one of the reasons why the judge found that he had sold stock. He personally owned the stock. The check was made out to him. It was deposited into his personal account. It was his stock that was sold. It wasn't repayment of loans that note use had borrowed. Okay. You may continue. I think that's all I have for now. Unless the panel has any further questions of me. Judge Brand, any questions? Nope. Judge Klein, any questions? Nope. All right, I have none. Thank you very much. Let's go back to Mr. Lee. Let's see how much time. Mr. Lee, you have right at three minutes. Let's go with that. I would just say that Mr. Painter loves to confuse the timelines. And these are all very stale and old. He says, I don't need them and all this, but he used it as the basis for his extension of time. And he knew about the note use thing, but the rule doesn't say, wait until the order is issued. The rule says, when you know about an issue, file 4003 promptly. This is in 2013, 15, he's doing depositions. He's asking about note use stock sales. This is post bankruptcy. My note use had no value, no assets. That's why they didn't go after the stock. That's why they didn't go after any stock or assets. And it was a defunct website that wasn't making a dime. Mr. Lee, it appears to me the clock isn't running. Madam Clerk. Thank you, Judge Brand. I did not notice, as is my wont. And so I think it is significant that the basis of this whole motion for extension of time and default judgment was 99% stale, 1% kind of stale, because it wasn't a new issue. He was asserting that I was sold stock back from 2015. This is when he should have filed the motion to deny a discharge or to hold the discharge. So he loves to confuse the court and say, no, he sold the stock and he did this and he did that. No, I produced documents that showed it was promissory loan to no juice with warrants to convert. Isn't it correct, Mr. Lee, that the court entered a turnover order back in June 29, 2015 that you referred to and then you appealed it, right? Yes, because- And that appeal went all the way to the Ninth Circuit, right? That's correct. And so, and that was decided by the Ninth Circuit on May 7, 2018. Yes. Right? Yes. And that was your appeal, right? Yes. And you're complaining, are you complaining that the trustees should have been actively going after you during the course of that appeal? No, because that appeal was specifically for the turnover of the home. These seven issues that were raised for the motion for extension of time were completely different. He was talking about rents that were collected in 2013, firearms that the Honolulu Police Department had, I couldn't turn them over. And the judge said, turn over this money, and I told him I don't have it, but I turned over $80,000 of the 120 something or whatever. So I only owed like 30 something grand. And in the big picture, I think this is a $10 million bankruptcy or whatever it is. You know, $25,000, not a lot in the big picture things, but if you look at the documents I produced, it's very consistent with my testimony. It was a promissory note that had a warrant to exercise if the stock went well. I did not have control of those stocks because it was set aside for investors that could convert into warrants. So the judge kind of turned that into, I lied by saying I didn't own the stock. I didn't, the company owns the stock and I have rights to it, but I sold the warrants out. And I was trying to explain that to them and just twist it into that I lied under oath, which is completely not true. And if he thinks I did that, he should have a hearing specifically about that 1%, not the 99%. I'm asking for a new hearing with the stuff that's not stale. All right, your time's up. Thank you very much for your good argument and we will take this matter under submission. Thank you. All right, thank you, your honors. Thank you, your honor. Thank you. All right, bye. Madam clerk, the last matter.
judges: Taylor, Brand, Klein